1. Since David Mathews has succeeded Caspar W. Weinberger as Secretary of Health, Education and Welfare, it is hereby ordered that Mathews be substituted for Weinberger as defendant and that this action hereinafter be captioned accordingly.

Mary HOLMES, as mother and natural guardian on behalf of Allen Thompson, Jr., an infant over the age of 14 years, Plaintiff,

v.

Caspar W. WEINBERGER,[1] Secretary of Health, Education, and Welfare, Defendant.

No. 75 C 1036.

United States District Court, E. D. New York.

Dec. 15, 1976.

Morris Rubin, Brooklyn, N.Y., for plaintiff.

David Trager, U.S. Atty., E.D.N.Y., Lewis F. Tesser, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

GEORGE C. PRATT, District Judge:

On January 20, 1975, an administrative law judge of the Social Security Administration (the Administration) held that plaintiff's son was entitled under 42 U.S.C. § 402(d) to surviving child's insurance benefits retroactive to 1967. But on May 5, 1975, the Administration's Appeals Council reversed. Acknowledging that plaintiff had contacted the Administration in 1967 in order to secure benefits on behalf of her son, the Council concluded that an oral claim could not constitute the statutorily mandated "application" for benefits, that a written statement indicating an intention to claim benefits had not been presented to the Administration until February of 1973, and that consequently, under 42 U.S.C. § 402(j)(1) which limits back-payment of benefits to the one-year period preceding the month of application, plaintiff's son was entitled to benefits retroactive only to February of 1972. Contending that her son's benefits should be retroactive to 1967,

plaintiff brought this action under 42 U.S.C. § 405(g) for review of the Council's decision.

Plaintiff and defendant Secretary of Health, Education and Welfare (the Secretary) have both moved for summary judgment. Since the court concludes that under the exceptional circumstances of this case plaintiff's oral efforts to obtain benefits for her son in 1967 constituted an "application" for the purposes of 42 U.S.C. §§ 402(d) & (j)(1), plaintiff's motion must be granted and the Secretary's denied.

I.

When plaintiff's common-law husband Allen Thompson, Sr. died in February of 1967, their minor son Allen Thompson, Jr. became eligible for surviving child's insurance benefits. Plaintiff therefore contacted the Administration in 1967 for the purpose of securing these benefits for her son. In fact, plaintiff testified that during that year she telephoned the Administration's office on numerous occasions and visited it twice. The administrative law judge's decision states that he "listened to and observed [her during her testimony] and [had] no reason to doubt that she made the inquiries alleged". And the Appeals Council acknowledged that "[h]er statements in the record as to the circumstances concerning her attempt to secure benefits in 1967 are consistent" and that "[s]he made numerous telephone inquiries about the 'claim' but was unsuccessful in obtaining any information because she did not have the deceased's social security number." Moreover, the record contains plaintiff's copies of two letters mailed to her by the Administration in July of 1967 which, in reference to "Allen Thompson", state respectively, "This is in regard to your inquiry on the above account," and "This is in regard to the above account." The Administration, however, was unable to locate either its own copies of these letters or any part of a related file; the record contains no evidence tending to justify the absence of these documents.

The administrative law judge found that "[f]iling of a formal application was delayed based on advice from the Administration to wait until the wage earner's [the decedent's] account number could be located." The Appeals Council not only left this finding undisturbed but also noted that "[a]dministrative procedure permits a person to file an application even though they [sic] do not have all the required information including a social security number."

Plaintiff testified to her belief that on one of her visits to the Administration in 1967 she filled out and signed an application for benefits. However, when asked whether the application was the same color as the one she filled out six years later in 1973, she freely admitted that she did not think so. Possibly on the basis of this concession, the administrative law judge concluded that no "formal application" had been filed in 1967,[2]

but, contrary to the implication of the Appeals Council, see Decision of Appeals Council at 5, he did not conclude that plaintiff had failed at that time to file any signed writing indicating her intent to claim benefits for her son.

## II.

The Appeals Council nevertheless concluded (1) that plaintiff had failed to file any such writing, formal or informal, until years later and (2) that this factual conclusion mandated the denial of child's insurance benefits for the period from the death of plaintiff's husband through January of 1972. This court considers both of those conclusions unjustified, but since rejection of the second necessitates granting plaintiff summary judgment and rejection of the first would merely require remand, only the second will be fully considered here.[3]

---

2. The court assumes that the administrative law judge was neither attempting to trick plaintiff nor mistaken in the assumption that the two forms were the same color.

3. Following is a brief summary of some of the reasons underlying the court's disagreement with the first conclusion—that plaintiff "did not file with the Social Security Administration any writing indicating her intent to claim benefits at any time prior to February 8, 1973":

    1. The Appeals Council appears to have based this conclusion partly on a letter written to the Administration by plaintiff's attorney on February 8, 1973, requesting the deceased's social security number to make possible the filing of an application on behalf of his son. The Council's decision observes that the letter "did not inquire about an earlier application or otherwise indicate that an application had previously been filed" and that it was on (*i. e.,* not until) her formal application of May 3, 1973, that plaintiff "indicated she had previously filed six years before". The Council was unwarranted in its reliance on the February 8 letter as support for its conclusion that plaintiff had not made even an informal claim in 1967. Any mention in the letter of an earlier application would have been gratuitous since the letter's purpose was to determine the decedent's social security number, not to establish plaintiff's son's entitlement to benefits either before or after the date of its writing. See Transcript of Administrative Proceedings at 61.

    2. The Appeals Council also appears to have relied upon its observation that "[t]he information which led to the location of the wage earner's social security number in 1973

was also available to the claimant [plaintiff] in 1967 and there is no reason why it could not have been located at that time." However, in 1973 it was only with the help of the Administration that plaintiff's attorney succeeded in ascertaining the decedent's social security number, and in 1967 the Administration failed to obtain the number despite plaintiff's request.

    3. The Council's decision also made the following argument:

> Administrative procedure permits a person to file an application even though they [sic] do not have all the required information including a social security number. Had the claimant filed an application under these circumstances in 1967, she would have been given an explanation of her rights and responsibilities as payee for her son and would have been given cards on which to report pertinent events; and when the social security number was obtained she would have been notified. The claimant has nothing in her possession which indicates that she ever filed a claim.

Even assuming that the Administration's two letters of July, 1967 acknowledging plaintiff's inquiries did not tend to show that she had filed a claim, the Council's reasoning is fatally flawed by its reliance on a presumption of regularity which is clearly unjustified under the circumstances here. The Council's assumption that plaintiff's application would have been processed in accordance with normal administrative procedures is controverted by the fact that the Administration employee handling plaintiff's case was operating under the erroneous belief that an application could not be proc-

42 U.S.C. § 402(d)(1)(A) makes filing an application a prerequisite to entitlement for child's insurance benefits, and 42 U.S.C. § 402(j)(1) limits retroactive payment of such benefits to the one-year period preceding the month an application is filed.

20 CFR § 404.601(c) states that "[u]nless otherwise specified, the term 'application' refers only to an application on a form prescribed in [20 CFR] § 404.602 * * *." 20 CFR §§ 404.602 and 422.505 in turn indicate that the "prescribed" form for applications for child's insurance benefits is the "SSA–6"—the form which plaintiff concededly filed in 1973, if not also in 1967.

20 CFR § 404.613(b) is currently the only regulation which specifies a means of applying for insurance benefits which does not entail the use of the prescribed form. This regulation provides:

A written statement filed by a person that indicates an intention to claim on behalf of another person monthly benefits * * * is * * * considered to be the filing of an application for such purposes, provided:

(1) The written statement bears the signature * * * of the person filing the statement * * *.

(Pursuant to this regulation, the Administration has treated plaintiff's attorney's letter of February 3, 1973, as an application, and the parties accordingly agree that under 42 U.S.C. § 402(j)(1), plaintiff's son is entitled to benefits retroactive at least to February of 1972.)

Assuming *arguendo* plaintiff's failure in 1967 to file either a formal application or any other signed writing indicating her intent to claim benefits for her son, literal application of the statutory and regulatory provisions reviewed above would necessitate granting the Secretary summary judgment. The exceptional circumstances of this case, however, make such a rigid enforcement of these provisions inappropriate.

Plaintiff's son concededly became eligible for insurance benefits on his father's death in February of 1967. The Administration has nevertheless denied him these benefits for a five-year period solely because his mother failed to follow its prescribed procedure and in spite of the fact that, absent affirmative misconduct on the part of an Administration employee, she would have complied with that procedure.

Confronted by these circumstances, the Appeals Council took the position "that the government cannot be estopped by the actions of its agents from requiring compliance with statutory conditions of entitlement". The Second Circuit's recent decision in *Goldberg v. Weinberger*, 546 F.2d 477 (2 Cir. 1976), would appear to support this conclusion. But even if *Goldberg* is assumed to preclude the application of estoppel here, entry of judgment in plaintiff's favor is justified by a far less sweeping rationale—namely that 42 U.S.C. § 402 entitles her son to surviving child's insurance benefits retroactive to February of 1967, regardless of whether during the following

essed without the decedent's social security number.

4. Finally, and most significantly, the decision states without further discussion: "The Social Security Administration has no evidence in its possession which supports a finding that either an application or a written statement to claim benefits was filed in 1967, or at any time prior to February 8, 1973." This statement also relies upon a presumption of regularity—here, the presumption that the absence of a formal or informal application in the Administration's regularly maintained records indicates that one was never filed. The Council's decision, however, does not even acknowledge—let alone attempt to deal with—the fact that the Administration failed to locate any file on the decedent's account even though plaintiff's cop-

ies of the two letters sent her by the Administration evidence the existence of such a file in 1967. Where was the file? The record does not tell us. But surely the absence of a file that once obviously existed cannot rationally be the basis for an inference that an application was never filed by plaintiff. This error alone would probably warrant remanding this case for reconsideration. *See Carnevale v. Gardner*, 393 F.2d 889 (CA2 1968); *cf. Singer v. Weinberger*, 513 F.2d 176, 178 (CA9 1975); *DePaepe v. Richardson*, 464 F.2d 92, 99 (CA5 1972); *Storck v. Weinberger*, 402 F.Supp. 603, 607 (D.Md.1975); *Smith v. Weinberger*, 394 F.Supp. 1002, 1006–07 (D.Md.1975); *Davis v. Weinberger*, 390 F.Supp. 813, 816–18 (M.D.Pa. 1975).

year she filed any writing indicating her intent to claim benefits on his behalf.

At first blush, 42 U.S.C. § 402's restriction of survivor's benefits to a claimant who "has filed application" for them might well seem to always preclude payment of such benefits when no written application has been made. However, the Administration itself has previously construed the statute's language otherwise. Indeed, the Secretary concedes that under earlier regulations promulgated by the Administration to implement § 402's "application" requirement, plaintiff's son would have been entitled to the retroactive benefits sought here.

These regulations, 20 CFR §§ 403.-701(f)(2) and (k)(1), were in effect for almost a decade beginning in 1946. Section 403.701(f)(2) provided:

With respect to cases arising prior to August 27, 1946, only, if an applicant expressed to a representative of the Bureau an intention to file a claim and his failure to file a formal application at that time is detrimental to his benefit rights, and resulted from the failure of such Bureau representative properly to advise or inform him concerning the requirements of the Act or the Administration's regulations thereunder as applied to the facts furnished by the applicant, or resulted from the action of such Bureau representative in informing him that an existing ruling precluded entitlement and subsequently such ruling was reversed, as of the date the applicant first expressed his intention to file, provided a formal application is filed and the applicant consents to such date as the date of receipt.

Thus, if the instant facts had arisen prior to August 27, 1946, and plaintiff had sought benefits prior to October of 1955, the Administration would have granted her son fully retroactive benefits pursuant to this regulation.

20 CFR § 403.701(b)(1) provided:

When a person orally or in writing expresses to the Bureau an intention to claim benefits or a lump-sum, and it appears that such person is not eligible or that his eligibility is so doubtful that the taking of an application upon a prescribed form would not be warranted, the Bureau shall so advise such person and shall also advise him that if he desires he may file an application on a prescribed form to obtain a formal adjudication of his rights. Where an application on a prescribed form is not then filed because of doubtful eligibility, the Bureau shall make and maintain in its files a written record of the expressed intention to claim benefits or a 'lump-sum,' in all cases in which some possibility of entitlement exists, even though remote. If it is later found that such person was eligible for benefits or a lump-sum at the time the record was made, this record shall, except where such person otherwise indicates, be deemed an Application filed with the Bureau as of the date it is made: Provided, that an application on a prescribed form is also furnished to the Bureau. * * *

If this regulation were still in effect, plaintiff's son would clearly be entitled to fully retroactive benefits. The provision has been construed not to require a "written record" where a claimant's expression of his intention has been otherwise established, *Johnson v. Hobby*, 131 F.Supp. 497, 499 (D.R.I.1955), and in any event, the letters mailed to plaintiff by the Administration would have evidenced the fulfillment of any "written record" requirement.

In contrast to former sections 403.-701(f)(2) and (k)(1), the provisions of 20 CFR §§ 404.601(c), 404.602, and 422.505 would prohibit full retroactivity in the instant case if they were to be applied in the literal manner elected by the Appeals Council below. True, some courts have in fact construed these more recent regulations to require that all applications for survivor's benefits be written, *Mandelstram v. Celebrezze*, CCH UIR ¶ 14,733 (E.D.N.Y. Mar. 17, 1967); *Emerson v. Celebrezze*, CCH UIR ¶ 14,237 (M.D.Ga. June 7, 1965), even where the Administration's misconduct may have caused a claimant not to follow up an oral inquiry or request with a written application. *Parker v. Finch*, 327 F.Supp. 193 (N.D.Ga.1971); *Smaltz v. Ribicoff*, CCH

UIR ¶ 14,623 (W.D.Mo. Sept. 27, 1962); *Flamm v. Ribicoff*, 203 F.Supp. 507 (S.D.N.Y.1961); *McNally v. Flemming*, 183 F.Supp. 309 (D.N.J.1960). No court, however, has attempted to reconcile the Administration's substantially divergent interpretations of 42 U.S.C. § 402's "application" requirement, reflected in 20 CFR §§ 403.701(f)(2) & (k)(1) and 20 CFR §§ 404.601(c), 404.602 & 422.-505.

Although the Secretary has not so argued, possibly the earlier regulations interpreted the term "application" in § 402 more expansively than Congress intended. However, having found nothing in the provision's legislative history to support this view, and guided by principles recently reaffirmed by the Second Circuit in *Rosenberg v. Richardson*, 538 F.2d 487 (1976), this court concludes that the Administration's earlier and broader construction of § 402 was fully warranted. In *Rosenberg*, confronted with two similarly divergent interpretations of the term "surviving wife" as used in 42 U.S.C. § 402(e), the appellate court rejected the more narrow, literal one, stating:

> It is a familiar maxim of statutory interpretation that courts should enforce a law so as to achieve its overriding purpose, even if the words of the act leave room for a contrary interpretation. *Haberman v. Finch*, 418 F.2d 664, 666 (2d Cir. 1969). "[I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.) (L. Hand, J.) *affirmed*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

Congress intended the Social Security Act as a broad program of social insurance, on which working people could rely to provide for themselves and their dependents in old age. It is essential, therefore, that the Act be liberally construed and applied. *Eisenhauer v. Matthews*, 535 F.2d 681 at 685 (2d Cir. 1976); *Adams v. Weinberger*, 521 F.2d 656, 659 (2d Cir. 1975); *Gold v. Secretary of Health, Education, and Welfare*, 463 F.2d 38, 41 (2d Cir. 1972); *Haberman v. Finch, supra* at 667. Moreover, the Social Security System is one based on contributions, in which claimants are not recipients of "hand-outs". They are, instead, beneficiaries of insured wage earners, "entitled to no less than a liberal and broad construction will allow." *Id.* 538 F.2d at 490.

This court's adoption of the Administration's earlier interpretation of the term "application" in 42 U.S.C. § 402 also finds substantial support in *Tuck v. Finch*, 430 F.2d 1075 (CA4 1970). There, under circumstances comparable to those here, the Fourth Circuit held that an individual had "made an application for monthly benefits" when he had merely "asked about receiving [them]".[4]

### III.

For the reasons set forth above, plaintiff's summary judgment motion is granted and defendant's denied. The decision of the Appeals Council is reversed, and the defendant is directed to pay plaintiff the insurance benefits for which her son is eligible, retroactive to February of 1967 in accordance with 42 U.S.C. §§ 402(d) & (j)(1).

SO ORDERED.

---

4. The court emphasized that the applicant was illiterate, that his inquiry was documented by the Administration's records, and that no question of substance existed as to his eligibility for benefits during the period in question.