Loren S. CHEERS, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH, EDUCATION, AND WELFARE of the United States, Defendant-Appellee.

No. 79-1061.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1979.

Decided Nov. 23, 1979.

Rehearing and Rehearing En Banc Denied Jan. 28, 1980.

R. David Grossman, Chicago Volunteer Legal Services, Niles, Ill., for plaintiff-appellant.

Steven Plotkin, U. S. Dept. of HEW, Chicago, Ill., for defendant-appellee.

Before PELL, SPRECHER and BAUER, Circuit Judges.

PELL, Circuit Judge.

In this case, we are asked to review one of those unfortunate occurrences where well-founded law imposes harsh consequences upon the individual. We are asked to review and overturn a final decision of the Secretary of Health, Education, and Welfare denying appellant disabled children's benefits for a period prior to May 1, 1975. The Secretary readily admits appellant was eligible for these benefits at the time, but refuses to grant the benefits because the appellant failed to file a written application as required by the administration's regulations.[1]

---

1. Section 2002(d)(1) of the Social Security Act, provides, in relevant part, for children's benefits for every child of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual if such child—

(A) has filed application for child's insurance benefits,

(B) at the time such application was filed was unmarried and . . . (ii) is under a disability (as defined in Section 223(d)) which began before he attained the age of 22, and

(C) was dependent upon such individual at the time such application was filed or at the time of such death.
42 U.S.C. § 402(d)(1).

Section 202(j)(1) of the Act provides in part that an individual who would have been entitled to a benefit under the Social Security Act for any month after August, 1950, had he filed application therefor prior to the end of such month, shall be entitled to such benefit for such month if he files application therefor prior to the end of the twelfth month immediately succeeding such month. 42 U.S.C. § 402(j)(1).

Appellant's mother died in August, 1960. Appellant, through his father, filed at that time a written application with the local Social Security office for surviving children's benefits. This application was correctly denied because appellant was ineligible under the then-existing requirements of the Act.[2] Appellant does not contest this denial. On October 10, 1967, appellant sustained a severe injury which caused him to become a permanent paraplegic.

In February 1968, Congress amended the Social Security Act, eliminating the requirements appellant failed to meet in 1960,[3] thereby making appellant newly eligible for disabled children's benefits. On April 1, 1976, appellant filed a written application for these benefits which were granted retroactive to April 1, 1975 in accordance with 42 U.S.C. § 402(j)(1) (Supp.1978).[4] Appellant requested reconsideration of this award, however, contending he should have received payments for a period prior to 1975 because he had become eligible in 1968, and he or others acting for him had repeatedly inquired orally at local Social Security offices about potential benefits between 1968 and 1975. On reconsideration, however, the Administration affirmed the limited award.

A hearing was then held at the appellant's request. Appellant testified that in response to his oral inquiries, he was consistently and incorrectly informed by Administration employees, again orally, that he remained ineligible, and that because of this information, he had failed to file a written application at those times. The Administration has no record of these inquiries, nor do any of its employees recall speaking on this subject with the appellant or anyone acting for him, nor could appellant pinpoint exactly when, where, or with whom these inquiries were made. The Administrative Law Judge (ALJ) held, therefore, that the appellant was not entitled to benefits prior to April 1, 1975. This decision was affirmed by the Social Security Administration Appeals Council, and thus became the final decision of the Secretary. Appellant next filed a *pro se* action in the United States district court pursuant to 42 U.S.C. § 405(g), requesting review and reversal of the Secretary's determination. The Secretary moved for summary judgment contending the regulations requiring written applications were a valid exercise of her authority, and that appellant had admittedly violated these regulations. This motion

Section 404.602 of the Social Security Administration's Regulations requires that "Applications shall be made . . . on such forms and in accordance with such instructions (provided thereon or attached thereto) as are prescribed by the Administration." 20 C.F.R. § 404.602 (1979).

Section 404.613 provides in part that "Where an individual files a written statement with the Administration that indicates an intention to claim monthly benefits, and such statement bears his signature or his mark properly witnessed, the filing of such written statement is, unless otherwise indicated, considered to be the filing of an application for such purposes, provided:

(1) The individual or a proper party on his behalf executes a prescribed application form that is filed with the Administration during the individual's lifetime and within the period prescribed in paragraph (c)(1) of this section." 20 C.F.R. § 404.613(a) (1979).

After the Administration has received from an individual a written statement as described, notice in writing shall be sent to such individual (or where he is a minor or incompetent, to the person who submitted the written statement on his behalf) stating that an initial determination will be made with respect to such written statement if a prescribed application form, executed by him (or by a proper party on his behalf), is filed with the Administration within 6 months from the date of such notice. 20 C.F.R. § 404.-613(c)(1) (1979).

This regulation also provides for statements filed on behalf of another. 20 C.F.R. § 404.-613(b) (1979).

2. Under the law then in force (42 U.S.C. § 402(d)(5) (1958) (repealed, 1968)), in order to qualify for benefits, appellant's mother would have had to have been "currently insured;" that is, she would have had to have been paid at least $50.00 in at least six of the thirteen quarters preceding her death, or she would have had to have been providing over one-half of appellant's support at the time of her death. Appellant's mother met neither of these requirements.

3. Public Law No. 90–248 § 151(c), 81 Stat. 860 (amending 42 U.S.C. § 402(d)(5) (1958)).

4. See footnote 1, *supra.*

was granted by the district judge and appellant now appeals from that ruling.

 In our review of administrative determinations under the Social Security Act, we are constrained by the limitations contained in 42 U.S.C. § 405(g). That section provides that the findings of the Secretary as to any fact are conclusive if supported by substantial evidence. The section also states that if a claim is denied due to the claimant's failure to comply with an Administration regulation, our review shall consider only the claimant's conformity with that regulation and the regulation's validity. In addition, 42 U.S.C. § 405(a) grants the Secretary full power and authority to promulgate rules and regulations which are necessary and appropriate to carry out the provisions of the Act. It is well established, of course, that we must uphold such regulations if they are "reasonably related" to the purposes of the enabling legislation. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1972); *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 280–81, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). Because we feel that the present regulations' aim of reducing fraud, confusion and laxity and increasing accuracy in the administration of the Social Security Act is "reasonably related" to the purposes of the Act, we find that these regulations are a valid and enforceable exercise of the Secretary's power under § 405(a).

The vast majority of prior holdings on this issue is in accord with our decision here. In *Leimbach v. Califano*, 596 F.2d 300 (8th Cir. 1979), for example, the court squarely faced the exact issue presently before us. In that case, the claimant's mother, the wage earner, died in January of 1967. The children, like appellant here, became eligible for surviving children's benefits with the passage of the 1968 amendments to the Social Security Act. The children's father made a written application for surviving spouse's benefits in November of 1967, but did not inquire about surviving children's benefits until he orally did so sometime in September of 1968. The father could not remember exactly when or with whom these inquiries were made, but he testified that in response to these inquiries the Administration employees erroneously told him that his children remained ineligible. The father claimed he made further oral inquiries in 1970, 1971 and 1972, always receiving the same response. In 1975, he independently learned of his children's eligibility from reading a newspaper article and made a written application which was granted retroactive only to June, 1974. The Administration affirmed the limited award throughout its procedures. The district court, however, reversed, awarding the children benefits as if a written application had been filed in 1968. On appeal, the Eighth Circuit reversed and reinstated the administrative determination. The appellate court held that the regulations were reasonably related to the need for prompt and effective administration of the Act, and thus were a valid exercise of the Secretary's powers under 405(a). *See also Goff v. Weinberger*, Unempl. Ins. Rep. (CCH) ¶ 14,470 (D.Conn. 1975), *aff'd*, 538 F.2d 309 (2d Cir. 1976), *cert. denied, sub nom. Goff v. Mathews*, 420 U.S. 896.

Appellant has attempted to avoid these and a great number of other cases that have relied upon and applied these regulations, found them to set forth a substantive precondition to the awarding of benefits, and held oral applications insufficient. *E. g., Johnson v. U. S.*, 572 F.2d 697 (9th Cir. 1978); *Clark v. Celebrezze*, 344 F.2d 479 (1st Cir. 1965); *Bender v. Celebrezze*, 332 F.2d 113 (7th Cir. 1964); *Coy v. Folsom*, 228 F.2d 276 (3rd Cir. 1955); *Parker v. Finch*, 327 F.Supp. 193 (N.D.Ga.1971); *Mandelstram v. Celebrezze*, Unempl. Ins. Rep. (CCH) ¶ 14,-733 (E.D.N.Y.1967); *Emerson v. Celebrezze*, Unempl. Ins. Rep. (CCH) ¶ 14,237 (N.D.Ga. 1965); *Smaltz v. Ribicoff*, Unempl. Ins. Rep. (CCH) ¶ 14,623 (W.D.Mo.1962); *Flamm v. Ribicoff*, 203 F.Supp. 507 (S.D.N.Y.1961); *McNally v. Flemming*, 183 F.Supp. 309 (D.N.J.1960). Appellant characterizes these cases as simply evaluating the respective "applications" in light of the regulations, without evaluating the regulations them-

selves in light of the philanthropic intent of the Social Security Act. We believe after reviewing these cases in light of the provision of § 405(g) that reviewing courts are to address the validity of the regulations as well as the claimants' compliance with those regulations, that the appellant incorrectly characterizes these prior holdings. However, even if appellant's characterization were correct, we would still choose to follow the Eighth Circuit in *Leimbach* and would uphold these regulations.

The circumstances of this case demonstrate the need and value of these regulations. At the hearing, the appellant was unable to specify exactly when, where, how often or with whom he or others acting for him inquired about potential benefits between 1968 and 1975. The ALJ made commendable efforts to obtain corroboration for appellant's allegations, corresponding with numerous Administration offices appellant or his representatives may have visited. At least one office affirmatively indicated it had never communicated with the appellant or his representatives, and the other efforts were similarly unsuccessful. Though we appreciate that the appellant proceeded *pro se* below,[5] he simply was unable to establish the exact dates of his inquiries or the dates he felt his payments should have begun. Appellant testified, for example, that an inquiry was made at one office in 1973, yet other evidence indicated that office was not even opened until 1974. Appellant later testified that the first time he visited an office was in 1975, then, after being corrected, changed his testimony to indicate the first visit to be in 1976. We do not recount this testimony to in any way intimate that appellant deliberately or even unintentionally fabricated his testimony. We fully realize and appreciate the difficulty in remembering specific dates, times, and places of occurrences up to nine years after those occurrences took place. Yet it is this very difficulty that underlines and justifies the need for regulations that require written applications. A written record is simply a practical necessity for the accurate payment of benefits.

Appellant contends that these regulations are invalid, however, and relies upon *Holmes v. Weinberger*, 423 F.Supp. 149 (E.D.N.Y.1976) which held that under the "exceptional circumstances" of that case, it would order benefits to be granted upon an oral application alone. *Holmes* involves facts somewhat similar to those before us in this case, with some important differences.

In *Holmes*, the plaintiff's husband died in 1967 and the plaintiff soon thereafter by telephone inquired of the local Social Security office concerning surviving children's insurance benefits for her son. The office employees advised her to not file a written application until the deceased's social security number could be established. This was, apparently, malefic advice because the Administration's regulations provided for the filing of an application even though the applicant is missing certain information, including a social security number. Nevertheless, based upon this advice, the plaintiff did not file a written application until February, 1973. She sought benefits, however, retroactive to 1967, the time when she could establish her first contact with the Administration. The ALJ granted these retroactive benefits because it found the plaintiff had sufficiently established her inquiries during 1967. The appeals council reversed, though it acknowledged that the plaintiff had orally inquired during 1967, on the grounds that the Administration's regulations provided only for written applications. The district court, on the other hand, noted that the Act required only an "application" without specifying a written application, and held that the regulation requiring a written application conflicted with the "liberal construction" to be accorded the Social Security Act. *See, Rosenberg v. Richardson*, 538 F.2d 487 (2d Cir. 1976). The court found, therefore, that a "literal application" of the regulations would be "inappropriate," 423 F.Supp. at 152. We believe that the *Holmes* decision is distinguishable from the instant litigation, but to the extent that *Holmes* conflicts with our present holding, we respectfully decline to follow it.

---

5. Appellant was represented by counsel on this appeal.

■ The most important distinguishing feature between these two cases, of course, is that in *Holmes* the ALJ specifically stated that he had "listened to and observed [the claimant's testimony] and [had] no reason to doubt that she made the inquiries alleged," 423 F.Supp. at 150. In addition, the record in *Holmes* contained copies of two letters mailed to the claimant by the Administration in 1967 which referred to the claimant's "inquiries" about the relevant social security account. In the present case, on the other hand, the ALJ specifically found that there was no persuasive evidence to support the appellant's claim that he had actually inquired about his benefits prior to 1976, and, in fact, stated:

> In support of his allegation that he did make contact with the Social Security office prior to April 1976, claimant has offered statements from physicians and friends. These statements indicate that claimant did discuss the fact that he should file for Social Security benefits, but they do not suggest that claimant actually took any action to file an application. . . . At least one of the corroborative statements is a fabrication or at least totally lacking in credibility. Attempts were made to secure corroborative facts relating to the other statements presented by claimant and none were forthcoming.

In light of 42 U.S.C. § 405(g), which states that these findings of fact and credibility determinations are binding upon us if supported by substantial evidence, which we believe they are in the present case, we find the *Holmes* decision is inapposite to the present controversy. This same analysis also applies to other cases relied upon by appellant: *Tuck v. Finch*, 430 F.2d 1075 (4th Cir. 1970) (Administration records corroborated allegation of oral application); *Crumpler v. Califano*, 443 F.Supp. 342 (E.D. Va.1978) (allegation of oral application not

contested); and *Johnson v. Hobby*, 131 F.Supp. 497 (D.R.I.1955) (remanded for finding on allegation of oral application).[6]

Appellant alternatively argues that even if the regulations are valid, this court should somehow write an exception into them that would allow oral applications when the failure to file a written application was due to agency error or incorrect information being given by agency employees. Though we are deeply sympathetic to the appellant's plight, we decline to impose a judicial exception to the requirement of a written application.

Considering the case before us, we do not believe an exception, even if one had been available, *compare Emerson, supra, Parker, supra, and Coy, supra, with Holmes, supra, McNally, supra and Rosenberg*, would have been warranted in a case such as this where there is lacking any substantial evidence that appellant indeed inquired at the Social Security offices, where we have, in fact, an administrative finding to the contrary, and where there is no showing that appellant was prevented from filing a written application if and when he was given the incorrect information, *see Parker v. Finch, supra* at 195. We, therefore, affirm the district court's grant of summary judgment with regard to this issue.

## ESTOPPEL

Appellant contends that the Secretary should be equitably estopped to deny the benefits because appellant's failure to file a written application was due to the Secretary's employees' giving incorrect information, and also maintains that in light of the *Holmes* decision, the Secretary should be collaterally estopped to contest the invalidity of her regulations.

■ With regard to appellant's equitable estoppel argument, appellant obviously encounters difficulty with the ALJ's find-

---

**6.** We do not mean to suggest, by distinguishing *Holmes* on this basis, that were there greater evidence appellant orally inquired at the Administration offices, we would find such an inquiry a sufficient "application." We believe, as did the court in *Leimbach*, that oral "appli-

cations," because they violate what we find to be valid regulations, are legally insufficient "applications" under the Social Security Act, regardless of the level of proof that the oral inquiries actually occurred.

ings of fact that there was little or no support for the contention that appellant ever communicated with, much less relied upon misinformation given by the Secretary's employees. Even if we were to make a contrary assumption arguendo, however, appellant cannot avoid the well established principle that estoppel shall not operate against the Government in these circumstances. As was aptly stated by the court in *Flamm, supra,* in circumstances remarkably similar to those here:

> [E]ven assuming that [claimant's son-in-law] did receive "misinformation" on which [claimant] acted to her detriment, it is plain that estoppel will not lie against the Government under these circumstances. Parties dealing with the Government are charged with knowledge of and are bound by statutes and lawfully promulgated regulations despite reliance to their pecuniary detriment upon incorrect information received from Government agents or employees. Failure to comply with the applicable statute and regulations precludes recovery against the Government "no matter with what good reason" the claimant believed she had come within the requirements. Estoppel will not lie regardless of the financial hardship "resulting from innocent ignorance." *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10; *Walker-Hill Co. v. United States,* 162 F.2d 259 (7 Cir. 1947), cert. den. 332 U.S. 771, 68 S.Ct. 85, 92 L.Ed. 356; *James v. United States,* 185 F.2d 115, 22 A.L.R.2d 830 (4 Cir. 1950).

203 F.Supp. at 510. *See also Leimbach, supra* at 304–05, *Bender, supra* at 115, *and Goff, supra* at 2499–643, and *Parker, supra,* at 195.

With regard to appellant's argument that the Secretary should be collaterally estopped to contest the invalidity of the regulations, we note that the *Holmes* decision is inconsistent with numerous decisions that have found in favor of the Secretary on this issue. To apply the doctrine of collateral estoppel in these circumstances would be, we believe, fundamentally unfair. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 at 330, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the Secretary.

AFFIRMED.