**Sarah L. McDONALD, Social Security Number 428–09–1771, Plaintiff,**

**v.**

**Richard SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. S 81–153.**

United States District Court,
N. D. Indiana,
South Bend Division.

Oct. 5, 1981.

Gregory S. French, Legal Services Program of Northern Indiana, South Bend, Ind., for plaintiff.

Donald Moroz, Asst. U. S. Atty., South Bend, Ind., for defendant.

### MEMORANDUM AND ORDER

SHARP, Chief Judge.

Plaintiff brings this action pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health and Human Services as to when Plaintiff first became entitled to old-age insurance benefits.

The issue before this Court is whether Plaintiff is entitled to old-age insurance

benefits beginning with the first month she was eligible for them, November 1978.

In 1975, at age 58, Plaintiff inquired at the district Social Security office about her eligibility for retirement insurance benefits when she reached age 62. On January 27, 1975, she received a written response from the Social Security Administration (SSA) stating that she would be ineligible for early retirement benefits since she only had 21 calendar quarters of work and needed, according to SSA computations, 27 quarters. (Exhibit 3).

SSA's computations were incorrect. Plaintiff actually had 33 calendar work quarters and was eligible for benefits when she reached age 62 in November 1978. However, relying upon the SSA computation of her work quarters, Plaintiff did not apply for early retirement benefits when she reached age 62.

In August 1979, Plaintiff took her husband to the Social Security office to apply for his disability benefits. During her husband's interview, SSA routinely reviewed its file on Plaintiff and this time computed that Plaintiff had sufficient quarters to entitle her to early retirement benefits on her own earnings record. Based upon this revised SSA computation of her quarters, Plaintiff filed an application for old-age insurance benefits on August 31, 1979.

Plaintiff was awarded benefits from the month of her application, August 1979, rather than the month of her eligibility, November 1978. She timely requested reconsideration of SSA's determination of the date of her entitlement. SSA, on November 15, 1979, notified Plaintiff that upon reconsideration it upheld its original determination to award Plaintiff benefits beginning in August 1979, rather than November 1978.

On May 6, 1980, the Administrative Law Judge held, after a full evidentiary hearing, that Plaintiff was deemed to have filed her application on the date she attained age 62, November 4, 1978, and was entitled to old-age insurance benefits beginning in that month (Exhibit 1). By its own motion, the SSA Appeals Council reopened the Administrative Law Judge's decision but denied Plaintiff's request for oral argument (Exhibit 4). On March 11, 1981, the Appeals Council notified Plaintiff that it reversed the Administrative Law Judge, that therefore, Plaintiff was first entitled to old-age insurance benefits in August 1979 rather than November 1978, and that this was the final decision of the Secretary (Exhibit 2).

A number of cases have considered the Department of Health and Human Services' regulations requiring written applications, namely, *Cheers v. Sec. of H.E.W.*, 610 F.2d 463 (7th Cir. 1979); *Leimbach v. Califano*, 596 F.2d 300 (8th Cir. 1979); *Holmes v. Weinberger*, 423 F.Supp. 149 (D.C.E.D.N.Y. 1976). In *Holmes*, the claimant, soon after her husband's death in 1967, telephoned the Social Security office for information regarding surviving children's insurance benefits. She was incorrectly advised by an SSA employee not to file a written application until a Social Security number was established for her deceased husband. Relying on this advice, the claimant did not file until February 1973. At that time, she requested retroactive benefits from 1967, the date she first contacted SSA and received incorrect information. The court in *Holmes* held that, under the facts presented, SSA could not require the claimant to have made a written application in 1967 in order to receive benefits retroactive to 1967 without conflicting with the liberal construction to be given the Social Security Act. Because the claimant met all applicable eligibility requirements except completing the prescribed application, and because the application was not submitted due to erroneous information received from SSA, *Holmes* found the claimant entitled to benefits retroactive to 1967.

■ The Seventh Circuit in *Cheers, supra*, limited the *Holmes* holding. However, *Cheers* permits an exception to its limitation of *Holmes*, stating, that to the extent that *Holmes* is distinguishable from the facts in *Cheers*, it remains undisturbed as law. *Cheers*, at 467. The Seventh Circuit carefully examined the major distinction between *Cheers* and *Holmes*:

The most important distinguishing feature between these two cases, of course, is that in *Holmes* the ALJ specifically stated that he had 'listened to and observed [the claimant's testimony] and [had] no reason to doubt that she made the inquiries alleged,' 423 F.Supp. at 150. In addition the record in *Holmes* contained copies of two letters mailed to the claimant by the Administration in 1967 which referred to the claimant's 'inquiries' about the relevant social security account. In the present case, on the other hand, the ALJ specifically found that there was no persuasive evidence to support the appellant's claim that he had actually inquired about his benefits prior to 1976.

*Cheers*, at 468. Thus, for cases similar to *Holmes*, those where the record clearly establishes to the Administrative Law Judge's satisfaction that an earlier inquiry for benefits was made, *Cheers* permits retroactive benefits without the prescribed written application.

The present case meets the distinguishing feature discussed by *Cheers* in that after carefully listening to and observing Plaintiff, the Administrative Law Judge specifically found:

1. The claimant inquired in 1975 about whether she would be eligible for retirement insurance benefits when she attained age 62.

2. An employee of the Social Security Administration made a misrepresentation of fact which caused the claimant to fail to apply for benefits in November 1978; the claimant would have applied in 1978 except for such misrepresentation of fact.

(Exhibit 1, page 8). As in *Holmes*, the record in the present case contains a copy of a letter (Exhibit 3) mailed to Plaintiff by SSA in 1975 which referred to her "inquiry for benefits." Because the record indisputably establishes that an inquiry for benefits was made in 1975, both *Cheers* and *Holmes*, despite the absence of the prescribed application form, entitle Plaintiff to benefits as of November 1978.

Recent case law suggests that to apply the doctrine of estoppel against the federal government, the claimant must show affirmative misconduct or misrepresentations as well as the four traditional elements of estoppel. *National Treasury Employees Union v. Reagan*, 509 F.Supp. 1337 (D.C.D.C.1981). The present case clearly satisfies the traditional estoppel requirements of:

(1) The party to be estopped must know the facts;

(2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(3) the latter must be ignorant of the true facts; and

(4) he must rely on the former's conduct to his injury.

*U. S. v. Georgia Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970) (citations omitted). SSA not only is the sole entity with the expertise to compute whether an individual has sufficient quarters of covered work to receive old-age insurance benefits, it is also the only entity possessing the records to make these computations. In the present case, after telling Plaintiff in writing that "our records show that you have not yet worked long enough under Social Security to receive retirement benefits," SSA instructed Plaintiff to apply for benefits "if you earn the additional credits" (Exhibit 3). Plaintiff neither knew nor had any way of knowing her actual number of quarters of covered work. As found by the Administrative Law Judge,

An employee of the Social Security Administration made a misrepresentation of fact which caused the claimant to fail to apply for benefits in November 1978; the claimant would have applied in 1978 except for such misrepresentation of fact.

(Exhibit 1, page 8). Further, Plaintiff's reliance resulted in financial injury, since she did not receive the benefits to which she was entitled at a time when such benefits were needed to meet household expenses and necessities.

Because the four traditional elements of estoppel are present, the final question is whether affirmative misconduct is likewise present. The Supreme Court first mentioned this standard in *INS v. Hibi*, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973). The term, however, was not defined in *Hibi* nor has it been defined in subsequent cases. In the most recent Supreme Court case on this issue, *Schweicker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), the claimant contended that she inquired orally in June 1974 of an SSA representative whether she was eligible for "mother's insurance benefits" under § 202(g) of the Social Security Act, 42 U.S.C. § 402(g). Allegedly, the field representative erroneously told her that she was ineligible. After learning in May 1975 that she was eligible for these benefits, the claimant filed an application and received benefits retroactive from the date she applied. However, the claimant contended that she should instead receive retroactive benefits from the month of her initial inquiry, June 1974. In holding that the field representative's error did not warrant applying estoppel against SSA, the Supreme Court stated that it had "never decided what type of conduct by a government employee will estop the government from insisting upon compliance with valid regulations governing distribution of welfare benefits." *Hansen, supra*, 101 S.Ct. at 1470. Therefore, a finding of affirmative misconduct and the applicability of estoppel can only be determined through careful examination of the mistake made by the government, the claimant's ability to prove that the government made a mistake, and whether the claimant could have identified the mistake and avoided its consequences. Because the mistake made by SSA in *Hansen* differs from the mistake made by SSA in this case, because Plaintiff's ability to prove the mistake is incomparably better than the claimant's ability in *Hansen*, and because the claimant in *Hansen* had the opportunity to identify SSA's mistake and avoid its consequences whereas Plaintiff did not, affirmative misconduct triggering estoppel is present in Plaintiff's case while not present in *Hansen*.

The mistake made by SSA in *Hansen* significantly differs from the mistake made by SSA in this case. In *Hansen*, the SSA field representative gave an erroneous opinion as to claimant's categorical eligibility for mother's insurance benefits, stating that claimant was ineligible because she divorced the deceased father. The field representative's statement in *Hansen* correctly stated the facts governing the claimant's eligibility but incorrectly stated the governing law.

In contrast, as the Administrative Law Judge found, Plaintiff in this case was given and relied upon SSA's misrepresentation of fact (Exhibit 1, page 8). While the number of work quarters required for Plaintiff to be eligible for old-age insurance benefits was a matter of law, the actual number of work quarters in her work record is a factual question. Plaintiff had no way to compute her quarters, because not only is the computation of work quarters within the exclusive domain of SSA but the records upon which the computations are based are in the exclusive possession of SSA. This distinction between mistake of law and fact is crucial, because it requires estoppel to be applied in the present case although not in *Hansen* or *Cheers*:

> Parties dealing with the Government are charged with knowledge of and are bound by statutes and lawfully promulgated regulations despite reliance to their pecuniary detriment upon incorrect information received from Government agents or employees.

*Cheers, supra*, at 469. The rationale for this rule is clear. As the laws and regulations are available for the public to examine, the government should not be held responsible for a claimant's failure to protect his own interests by examining for himself whether a government employee's statement of the law is correct or not. However, this rationale is inapplicable where the government employee misstates facts rather than law. When a government agent or employee gives a claimant incorrect factual information, especially as in the present case where such information is in the exclusive possession of the government, the

claimant cannot protect his own interest by examining for himself whether the government employee's statement of fact is correct or not. Unlike the claimants in *Hansen* and *Cheers*, Plaintiff could not go to the library or her lawyer to verify the figures she received from SSA. Those computations could only be made by SSA based upon records only SSA had. Therefore, affirmative misconduct is present in Plaintiff's case, and SSA can be estopped without conflicting with either *Hansen* or *Cheers*.

A second distinction between *Hansen* and this case is the documentation Plaintiff has of the misstatement of fact. The majority in *Hansen* found documentation of SSA's affirmative misconduct to be essential to the finding of affirmative misconduct and the consequent granting of estoppel. This concern to confirm affirmative misconduct was also examined in *Lavin v. Marsh*, 644 F.2d 1378 (9th Cir. 1981). *Lavin* involved an Army reserve officer who remained in the military because of incorrect promises of pension benefits from Army recruiters. The court noted:

> While Lavin was perhaps justified in accepting his recruiters' representations that benefits were available, before invoking the doctrine of estoppel we ask whether the citizen dealing with the government has acted diligently to protect his own interests. Lavin apparently did not attempt to confirm the recruiter's representations by either reading the mandatory retirement provisions, or by requesting a written statement setting forth his eligibility.

*Lavin, supra,* at 1384. Because Lavin could have confirmed the recruiter's representation himself by examining information readily available to him and because he did not request a written statement documenting what he had been told, *Lavin* declined to apply estoppel against the government. However, where, as in the present case, the claimant has no way to confirm or deny the representations made by a federal agency, and where the claimant has done all that she can to get the agency to confirm its representations in writing (Exhibit 3), *La-*

*vin* certainly permits a finding of affirmative misconduct resulting in estoppel.

The third factual distinction between *Hansen* and the present case is that Plaintiff has no way to identify SSA's mistake or to take action to avoid the consequences of the mistake. Both the majority and dissent in *Hansen* indicate that when an SSA employee's conduct causes a claimant to fail to take action, and that failure cannot be corrected, the SSA conduct constitutes affirmative misconduct. "But at worst, Connelly's conduct did not cause respondent to take action, cf. *Federal Crop Insurance Corp. v. Merrill, supra,* [332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10], or fail to take action, cf. *Montana v. Kennedy, supra,* [366 S.Ct. 308, 81 S.Ct. 1336, 6 L.Ed.2d 313], that respondent could not correct at any time." *Hansen, supra,* 101 S.Ct. at 1471.

In this case, however, SSA's misrepresentation did cause Plaintiff to fail to take an action that could not be corrected at any time. Plaintiff was 58 years old when she inquired about whether she would be eligible for old-age insurance benefits when she attained age 62. According to the district manager of the Social Security office that misinformed Plaintiff, even if Plaintiff had completed a prescribed application at the time SSA provided her with erroneous information, the application would have been disallowed because she would not have been age 62 by the time SSA made a final determination on the application (Exhibit 5). Therefore, the Administrative Law Judge concluded that even though the SSA letter containing the factual misrepresentation told Plaintiff that she could file a formal application to obtain a formal determination on her inquiry, such a possibility was inapplicable to Plaintiff's situation (Exhibit 1, page 5). Unlike the claimant in *Hansen* who could have filed an application at any time and thereby identified and avoided the consequences of SSA's mistake, Plaintiff could not have filed an application at any time to challenge SSA's error. Because SSA's error did not permit Plaintiff to identify and correct it, such misrepresentation constitutes affirmative misconduct triggering estoppel.

All applicable eligibility requirements were met by Plaintiff in November 1978, except a prescribed application form that was not submitted due to erroneous factual information received from SSA. SSA's reliance upon the absence of the prescribed form to deny Plaintiff's claim for benefits beginning in 1978 conflicts with the remedial purpose of the Social Security Act. The record clearly established to the Administrative Law Judge's satisfaction that Plaintiff had inquired for benefits and had received incorrect factual information that caused her to apply for benefits in November 1978.

Plaintiff did not receive old-age insurance benefits in November 1978 because she relied upon SSA's statement that to apply for benefits she needed additional calendar quarters of work, the computation of which could only be made by SSA based upon records only SSA had. The Administrative Law Judge found that this statement constituted a misrepresentation of fact that caused the claimant to fail to apply for benefits in November 1978. The record contains a copy of the letter to Plaintiff from SSA which documents Plaintiff's inquiry and SSA's misrepresentation. The Administrative Law Judge concluded that Plaintiff could not obtain a formal determination on her inquiry by filing a prescribed application form. Therefore, the Court grants her Motion for Summary Judgment and finds that SSA is estopped from relying on the absence of a prescribed application form to deny Plaintiff's claim for benefits beginning in November 1978.

Judgment shall enter accordingly.