**Maria Ann SCIME, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

No. CIV–84–498C.

United States District Court,
W.D. New York.

Nov. 7, 1986.

Siegel, Kelleher & Kahn (Timothy G. O'Connell, of counsel), Buffalo, N.Y., for plaintiff.

Roger P. Williams, U.S. Atty. (C. Donald O'Connor, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

This is an action brought under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services, which denied plaintiff's application for child's insurance benefits retroactive to the date of plaintiff's eligibility. This matter is before the court on the motion for judgment on the pleadings.

The sole issue in this action is the date upon which claimant Maria Scime became entitled to receive surviving child's benefits after the death of her mother. The Administrative Law Judge [ALJ] who presided at claimant's original hearing determined that her entitlement commenced on September 30, 1978, the date of her mother's death. The ALJ who presided at claimant's supplemental hearing recommended a commencement date of June, 1981. The Appeals Council rejected the determinations of both ALJs, and twice held that the claimant's entitlement commenced in September, 1981, six months retroactive from the March, 1982, date of her first formal application for benefits.

*I. Procedural History*

The procedural history of this case is complicated and requires some review. In general, it is a troubling history of careless errors by the Social Security Administration [SSA] on matters especially entrusted to it, made more troubling by the Administration's contention that it should take no responsibility for those errors.

The central fact of this case is that the government failed to compute five years of earnings by the claimant's mother and, therefore, incorrectly determined that the claimant's mother was not an insured person at the time of her death. The records of the SSA represented this error of fact as true for more than three years. The error was corrected only after prompting by the claimant's father, Samuel Scime, who discovered that there might be a problem through reading a series of articles in the daily newspaper about losses in records transferred from the Railroad Retirement

Board to the SSA. The corrected records indicated that the claimant's mother was a fully insured person.

After the records were corrected, Samuel Scime, in March of 1982, made written application for lump sum burial benefits to defray the expenses of his wife's burial. He also applied on behalf of his daughter for surviving child's benefits from September 30, 1978, the date of her mother's death. These applications were denied initially and on reconsideration upon the ground of late filing of a written application by the claimants (Tr., pp. 108–110). The claimants thereafter requested a hearing, which was held on August 16, 1982, before ALJ Lambert Haley.

After a full hearing, Judge Haley found that the SSA records had been in error through 1981, as noted above, that the claimants had orally inquired about benefits a few weeks after Mrs. Scime's death, and that the SSA had advised the claimant by letter that Mrs. Scime was not an insured person. The ALJ determined that the SSA's denial through 1981 that Mrs. Scime was an insured person estopped the SSA from now barring these claims upon the ground of late filing of a written application. Judge Haley concluded that Mr. Scime's claim for lump sum burial benefits should be paid and that Maria Scime was entitled to surviving child's benefits as of the September 30, 1978, date of her mother's death. The ALJ reached this decision on October 13, 1982. Lump sum burial benefits of $255 were paid on Mr. Scime's claim pursuant to the decision (Tr., p. 141), and that claim has not since been contested.

On January 28, 1983, after expiration of the normal 60–day appeal period, Judge Haley's decision was referred to the Office of Insurance Programs for a "clarification" (Tr., p. 37). On February 28, 1983, that office sent a memorandum back to the Office of Appeals, disagreeing with the decision of Judge Haley. The Appeals Council reopened the case on September 20, 1983, upon the ground urged by the memorandum from the Office of Insurance Pro-

grams: namely, that the SSA, regardless of its own misrepresentations, could not be estopped from enforcing the requirement that applications be made in writing (Tr., pp. 30–33, 120). The Appeals Council reopened Judge Haley's decision pursuant to the authority of 20 C.F.R. §§ 404.988(b) and 404.989(a)(3) (Tr., p. 3), which allows reopening within four years if "the evidence that was considered in making the determination or decision clearly shows on its face that an error was made."

On February 28, 1984, the Appeals Council reversed the decision Judge Haley had reached on October 13, 1982. The Appeals Council held that the claimant was entitled to benefits only from March, 1982, when she made written application, plus the six months' retroactive eligibility allowed by section 404.621(a)(1)(ii). This placed the claimant's entitlement date at September, 1981, instead of September, 1978, as found by Judge Haley. The Appeals Council stated that it had "carefully considered ... the entire evidence of record" (Tr., p. 31) in reaching its decision. However, when the claimant appealed for review by the district court, the taped transcript of claimant's hearing was discovered to be inaudible.

Because of the inaudible hearing tape, the district court in November, 1984, remanded the claimant's case for a new hearing. The transcript of this second hearing (Tr., pp. 51–97) is a record of great confusion, as could be expected. At the hearing, ALJ Simon J. Nash indicated that he did not understand how the Appeals Council could have reopened Judge Haley's decision. It was not clear to him whether payments had been made to the claimants, why the lump sum burial payment was apparently no longer contested, and why there were documents in the record (Tr., p. 13) indicating an action by the SSA to recoup payments made to the claimants. Indeed, this court has been hard-pressed to make sense of the record on these matters. I note here that as to the documents seeking recoupment of overpayments, I have proceeded according to a provisional understanding that this matter derives from an-

other error by the SSA not related to the present issue. Apparently, the SSA mistakenly paid the claimant child survivor benefits *beyond* the date upon which it claims she lost her eligibility due to age. It now seeks to recover those payments. This issue would thus be separate from the issue of when the claimant *first became entitled* to benefits. ALJ Nash ultimately reached this conclusion (Tr., p. 15), and claimant's counsel has not indicated anything to the contrary.

Judge Nash, after claimant's second "Supplemental Hearing," reiterated the basic factual findings of Judge Haley, including the finding that the claimants made oral inquiries to the SSA about benefits shortly after Mrs. Scime's death and that the SSA erroneously advised the claimants that Mrs. Scime was not an insured person (Tr., pp. 17–18).

However, Judge Nash concluded from his findings that the critical event for determining the commencement date of claimant's benefits was not Mrs. Scime's death, or the oral inquiries and erroneous responses concerning benefits in the wake of her death, but rather a December, 1981, telephone call by Mr. Scime to the SSA Office. It was during this call that Mr. Scime asked specific questions about whether the SSA's records fully reflected Mrs. Scime's railroad employment, an issue which had been brought to Mr. Scime's attention by a recent series of articles in the daily paper. Mr. Scime was again informed that SSA records showed that his deceased wife was not an insured person. Judge Nash concluded that an SSA employee's written "report of contact" covering this telephone call established a protective filing date for a subsequent formal application for benefits in March, 1982.

Judge Nash further concluded that no written application for child's insurance benefits or written statement of intent to claim such benefits had been filed prior to December, 1981, and that the date of entitlement was thus six months retroactive to that date, or June, 1981.

Upon review, the Appeals Council rejected the determination of Judge Nash and again found that the claimant was entitled to benefits only from a date six months retroactive to her formal application, or September, 1981.

## II. Discussion

The position of the SSA in this case, through the decisions of its Appeals Council, may be succinctly stated. In order to become entitled to Social Security benefits, an individual is required to file a written application in accordance with sections 404.610 and 404.611 of the Social Security Regulations. Thus, the SSA holds that the claimant in this case first became entitled to benefits when she first satisfied the requirement for a written application on March 18, 1982. The SSA contends that it cannot be estopped from enforcing this requirement, even if the SSA's own misconduct is responsible for a claimant's failing to satisfy the requirement [Tr., pp. 7, 32–33].

In support of its position, the SSA cites the United States Supreme Court decision in *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). In that case, the claimant contended that she inquired orally in June, 1974, of an SSA representative whether she was eligible for a certain category of benefits. The SSA representative allegedly responded with a misstatement of governing law, erroneously advising the claimant that her earlier divorce made her ineligible. After learning in May, 1975, that she was eligible, the claimant filed an application and received benefits retroactive from the date she applied. However, the claimant argued that she should receive retroactive benefits from the time of her original inquiry in June, 1974. The Supreme Court held that the field representative's error did not warrant applying estoppel against the SSA.

To begin with, to the extent that the SSA argues that the government may never be estopped from enforcing a regulatory requirement, *Schweiker v. Hansen*, is clearly not supporting. In *Hansen*, the Supreme

Court specifically states: "This Court has never decided what type of conduct by a Government employee will estop the Government from insisting upon compliance with valid regulations ..." 450 U.S. at 788, 101 S.Ct. at 1470. Several circuits, including this circuit, have held[1] that where the traditional elements of estoppel are present, then the additional element of "affirmative misconduct" by the government will entitle a petitioner to invoke estoppel against the government. The traditional elements of estoppel are clearly present in the instant case[2], and this has not been a disputed issue. Determining whether an instance of misconduct by the government amounts to affirmative misconduct has in turn been a matter for case-by-case evaluation, guided by certain prescribed considerations.

Before turning to those considerations, I note that they are to be viewed against the background of another: "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). This duty is a central reason why a greater degree of misconduct is required before estoppel may be invoked against the government: the depletion of the treasury would be too great if the government was liable for every material misrepresentation of its programs made by any one of its many agents. In the instant

case, however, we are not concerned with the misrepresentation of an SSA regulation or procedure by an individual agent, but rather with factual misrepresentation in the SSA's own records on a fundamentally material matter. The responsibility of the government to be accountable in such circumstances is especially great, and the threat to the treasury small, due to the infrequency of such circumstances. In sum, it is not the duty of the courts to protect the treasury against those who would be unquestionably entitled to benefits prescribed by Congress but for factual misrepresentation by the administering agency. To "protect" the treasury against such claimants is not "to observe the conditions defined by Congress for charging the public treasury," but to subvert these conditions. Thus, in this case, the threat to the treasury which might arise from the application of estoppel against the SSA is not the critical factor that it may be in other factual circumstances.

In *McDonald v. Schweiker,* 537 F.Supp. 47 (N.D.Ind.1981),[3] a post-*Schweiker v. Hansen,* case which invokes estoppel against the SSA in factual circumstances virtually identical to those in the instant case, the district court summarized as follows the guiding considerations for determining whether government misconduct is "affirmative misconduct:"

> a finding of affirmative misconduct and the applicability of estoppel can only be

---

1. *See Community Health Services v. Califano,* 698 F.2d 615 (3d Cir.1982); *Merdoza-Hernandez v. INS,* 664 F.2d 635, 639 (7th Cir.1981); *Corniel-Rodriguez,* 532 F.2d 301, 312 (2d Cir.1976); *Santiago v. INS,* 526 F.2d 488, 491–93 (9th Cir.1975).

2. The traditional elements of estoppel are:
   (1) The party to be estopped must know the facts;
   (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;
   (3) the latter must be ignorant of the true facts; and
   (4) he must rely on the former's conduct to his injury.
   *U.S. v. Georgia Pacific Co.,* 421 F.2d 92, 96 (9th Cir.1970) (citations omitted).

The SSA is the sole entity with the expertise and factual data to compute whether an individual has sufficient quarters of covered work to make her surviving children eligible for benefits. *McDonald v. Schweiker,* 537 F.Supp. 47 (N.D.Ind.1981). In this case, both ALJs found that the SSA directly communicated to plaintiff that plaintiff was ineligible for benefits after initially indicating that an application form would be sent to plaintiff. Plaintiff did not know and had no way of knowing her mother's actual number of quarters of covered work. Finally, plaintiff's reliance resulted in financial injury since she did not receive financial benefits to which she was entitled. *Id.*

3. Separate decision on related fee award in *McDonald v. Schweiker,* 531 F.Supp. 327 (N.D.Ind. 1982), *reversed* in *McDonald v. Schweiker,* 726 F.2d 311 (1983).

determined through careful examination of the mistake made by the government, the claimant's ability to prove that the government made a mistake, and whether the claimant could have identified the mistake and avoided its consequences.

537 F.Supp. at 50.

These considerations are closely derived from prior Supreme Court decisions cited by the Court in *Schweiker v. Hansen.* The Court cited *Federal Crop Insurance v. Merrill, supra,* and *Montana v. Kennedy,* 366 U.S. 308, 81 S.Ct. 1336, 6 L.Ed.2d 213 (1961), in suggesting that estoppel could not be invoked against the government absent government misconduct which causes a claimant "to take action or fail to take action which the [claimant] could not correct at any time." *Schweiker v. Hansen, supra,* at 789, 101 S.Ct. at 1471.

That situation, which did not exist in *Schweiker v. Hansen,* does exist in the present case. In the present case, of course, there is no question that the government made a mistake: the SSA acknowledges that its records were in error for more than three years. The claimant's ability to prove that the government made a mistake is thus much greater here than it was in *Schweiker v. Hansen,* where the alleged mistake involved one alleged oral statement by an SSA representative. Most importantly, the claimant here relied upon a misrepresentation of fact by the SSA, not upon an erroneous statement of law, as occurred in *Hansen.* This is significant because the laws and regulations governing the SSA are available for the public to examine, whereas the computation of work quarters to determine insured status requires information which is in the exclusive possession of the government. When a claimant receives an erroneous factual representation of the type involved here, the claimant cannot protect her own interest by examining for herself whether the government's statement of fact is correct or not. That is, unlike the claimant in *Hansen,* the claimant in this case would *not* have been approved for benefits at the time of her mother's death had she made written appli-

cation then. The claimant was *in fact* ineligible for benefits then, and for more than three years thereafter, because of the SSA's error of fact. The claimant's failure to make written application then, based upon this error of fact, is, in the SSA's view, not correctable now or at any future time by the claimant: the claimant's entitlement to benefits from September, 1978, to September, 1981, is, according to the SSA, irretrievably lost.

The inequities of this situation are manifest, and the combination of the SSA's errors and its position respecting those errors conflicts directly with what Justice Cardozo called the "fundamental and unquestioned" principle of our jurisprudence that "no one shall be permitted to ... take advantage of his own wrongs." *R.H. Stearns Co. v. United States,* 291 U.S. 54, 61–62, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934). This "venerable maxim" was invoked by the Court of Appeals in this circuit to estop the United States from deporting an alien whose inadvertent violation of a section of the Immigration and Naturalization Act was occasioned by the "affirmative misconduct" of American consular officers who failed to impart crucial information to the alien. *Corniel-Rodriguez v. Immigration and Naturalization Service,* 532 F.2d 301, 312 (2d Cir.1976). And the provision of erroneous *factual* information, like that provided by the SSA in this case, may be the source of special inequity. As the court stated in *Brandt v. Hickel,* 427 F.2d 53, 56 (9th Cir.1970) (cited with approval in *Community Health Services v. Califano,* 698 F.2d 615 (3d Cir.1983)):

> Not every form of official misinformation will be considered sufficient to estop the government.... Yet some forms of erroneous advice are so closely connected to the basic fairness of the administrative decision making process that the government may be estopped from disavowing the misstatement.

In sum, in this case, the factual and indisputable nature of the mistake made by the government distinguishes it fundamentally from the government's mistake in

*Schweiker v. Hansen.* These distinctions testify to a much greater degree of government misconduct in the present case. In consequence, there is virtually no chance that this claimant "could have identified the mistake and avoided its consequences." *McDonald v. Schweiker, supra,* 537 F.Supp. at 50. The SSA's misrepresentation of fact caused this claimant to "fail to take action" that no subsequent action by claimant could correct. *Schweiker v. Hansen, supra,* 450 U.S. at 789, 101 S.Ct. at 1471.

In light of the above, I find that the SSA's erroneous factual representation through 1981 that the claimant was ineligible for surviving child benefits estops the SSA from now barring her claim upon the ground of late filing of a written application. Accordingly, the decision of the Secretary is reversed, and I find that claimant Maria Scime is entitled to surviving child's benefits as of the September 30, 1978, date of her mother's death. The case is remanded solely for the calculation of claimant's benefits.

So ordered.