**VALLEY FAMILY PLANNING, a North Dakota nonprofit corporation, on behalf of itself, and all others similarly situated; Shari Doe, Individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**The STATE OF NORTH DAKOTA; Arthur A. Link, Individually and as Governor of the State of North Dakota; Dr. Jonathan Weisbuch, Individually and as State Health Officer; Allen Olson, Individually and as Attorney General of the State of North Dakota; Jim Odegaard, Individually and as County Attorney of Grand Forks County, their agents, representatives, successors, those acting in concert with them and all others similarly situated, Defendants.**

Civ. No. A3–79–87.

United States District Court,
D. North Dakota,
Southeastern Division.

May 15, 1980.

Larry F. Nordick, Legal Assistance of N.D., Inc., Fargo, N. D., Janet Benshoof and Judith Levin, American Civil Liberties Union Foundation, New York City, Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., for plaintiffs.

Allen I. Olson, Atty. Gen., Davis S. Niss, Asst. Atty. Gen., Bismarck, N. D., James T. Odegard, State's Atty. of Grand Forks Co., A. R. Hausauer, Jr., Asst. State's Atty., Grand Forks Co., N. D., for defendants.

## ORDER

BENSON, Chief Judge.

Plaintiffs in the above entitled action contend that N.D.Cent.Code § 14–02.3–02 is invalid because it conflicts with federal statutory law and with the United States Constitution. This court has preliminarily enjoined the enforcement of § 14–02.3–02 pending the issuance of a declaratory judgment. 475 F.Supp. 100, 105 (D.N.D.1979). There are now before the court cross motions for summary judgment. In addition, defendants have moved to dismiss for lack of subject matter jurisdiction or in the alternative to certify a question of law to the North Dakota Supreme Court.

I. *The Motion to Dismiss.*

Plaintiffs contend that N.D.Cent.Code § 14–02.3–02 conflicts with various federal statutory schemes, in particular Title X of the Public Health Service Act, 42 U.S.C. §§ 300 through 300a–8; Title V of the Social Security Act, 42 U.S.C. § 701, *et seq.*; and Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.* Plaintiffs also contend that § 14–02.3–02 violates the rights of plaintiffs and their clients under the First and Fourteenth Amendments to the Constitution.

The claim of statutory incompatibility raises a federal claim under the Supremacy Clause but does not confer jurisdiction un-

der 28 U.S.C. § 1343.[1]  *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).  The constitutional claims raised by plaintiffs, however, are clearly substantial, thus endowing this court with jurisdiction to hear those claims.  28 U.S.C. § 1343; 42 U.S.C. § 1983.  Having jurisdiction under § 1343, the court has pendent jurisdiction to decide the Supremacy Clause claim.  *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).  The motion to dismiss will be denied.

## II.  *The Motion to Certify.*

Defendants move that this court abstain from ruling on the motions for summary judgment pending certification of a question of law to the North Dakota Supreme Court.  It is contended that the North Dakota Supreme Court could construe the word "refers" as used in N.D.Cent.Code § 14–02.3–02 in such a way as to materially alter the nature of the statutory claims raised by plaintiffs.

Defendants have raised no arguments not before the court when it previously declined to abstain in the order of August 16, 1979.  The court adheres to that ruling and to the reasoning supporting it.  *See* 475 F.Supp. at 102.  The motion to certify will be denied.

## III.  *The Cross Motions for Summary Judgment.*

The parties have filed cross motions for summary judgment pursuant to Rule 56, F.R.Civ.P., with accompanying exhibits and affidavits.  There do not appear to be any genuine issues as to material facts.  Disposition of this case by summary judgment is therefore appropriate.

## A.  Background.

The challenged statute in this action, N.D.Cent.Code § 14–02.3–02, provides as follows:

No funds of this state or any agency, county, municipality, or any other subdivision thereof and no federal funds passing through the state treasury or a state agency shall be used as family planning funds by any person, public or private agency which performs, refers, or encourages abortion.

N.D.Cent.Code § 14–02.3–05 provides that "[a]ny person found guilty of violating [§ 14–02.3–02] shall be guilty of a class B misdemeanor."

Plaintiff Valley Family Planning[2] is a private nonprofit corporation which provides family planning services.  Over fifty percent of Valley Family Planning's funds are received from the federal government through the State of North Dakota.  The remainder of its funds are received directly from the state and from patient fees.  Over seventy percent of Valley Family Planning's clients have incomes beneath the poverty level and receive services without charge.

The 1980 budget for Valley Family Planning shows that thirty-three percent of its funds are received under Title X of the Public Health Service Act, 42 U.S.C. §§ 300 through 300a–8, twenty percent of its funds are received under Title V of the Social Security Act, 42 U.S.C. § 701, *et seq.,* and three to four percent of its funds are received under Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*[3]  *See* Affidavit of Shari Doe.

Valley Family Planning neither performs abortions nor encourages its clients to obtain abortions.  It does provide to women with problem pregnancies information on their legal options, including abortion.  The staff members of Valley Family Planning explain to such women the procedures, risks

---

**1.** Jurisdiction would exist under 28 U.S.C. § 1331 if the matter in controversy exceeded $10,000.00 in value.

**2.** Although this action was brought by Valley Family Planning and Shari Doe on their own behalf and on behalf of all others similarly situated, there has been no Rule 23 class certification.  N.D.Cent.Code § 14–02.3–02 will be

analyzed only insofar as it affects the named plaintiffs.

**3.** Valley Family Planning began receiving funds under Title XIX of the Social Security Act (Medicaid) in September 1979.  The court did not, in its order of August 16, 1979, treat the question of whether N.D.Cent.Code § 14–02.3–02 conflicts with Title XIX.

and costs of abortion, the stage of fetal development, if asked for, and give the client the names of physicians in the area who perform abortions. Valley Family Planning does not contact the physician for the client. Under the plain meaning of the word "refer," Valley Family Planning offers abortion referral services to its clients.

The following legal analysis will be used to determine whether N.D.Cent.Code § 14–02.3–02 is valid. Initially, it will be determined whether § 14–02.3–02 is compatible with the federal statutory schemes under which Valley Family Planning receives its funds. If § 14–02.3–02 is incompatible with any of the federal statutes, it is preempted by federal law and will not prevent funds received under that statute and administered by the state from being used for abortion referral services. If § 14–02.3–02 is found to be incompatible with all the federal statutes in question the court need not consider plaintiffs' constitutional claims. If § 14–02.3–02 is compatible with any one of the federal statutes in question, the court must then reach the question of whether § 14–02.3–02 infringes on a right protected by the United States Constitution. *See Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

### B. Title X of the Public Health Service Act.

Title X of the Public Health Service Act authorizes the Secretary of Health, Education and Welfare to make grants to and enter into contracts with public and nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services. 42 U.S.C. § 300. Section 1008 of the Act, 42 U.S.C. § 300a–6, provides: "None of the funds appropriated under this subchapter [Title X] shall be used in programs where abortion is a method of family planning." Regulations promulgated by the Secretary provide that an application for Title X funds must contain assurances that the family planning project "will not provide abortion as a method of family planning." 42 C.F.R.

§ 59.5(a)(9). The regulations further provide that the project will provide for "medical services related to family planning including . . . necessary referral to other medical facilities when medically indicated. . . .", 42 C.F.R. § 59.5(d), and for "coordination and use of referral arrangements with other providers of health care services, . . .." 42 C.F.R. § 59.-5(i).

42 U.S.C. § 300a–6's proscription of the use of Title X funds in programs where abortion is a method of family planning obviously applies to the *performance* of abortions by a recipient of Title X funds. The legislative history of § 1008 of the Act does not address the question of abortion referrals, although it appears that § 1008 was intended to prohibit the use of Title X funds to promote or encourage abortion. *See* 116 Cong.Rec. H10,286 (daily ed. Nov. 16, 1970) (remarks of Rep. Dingell). *See also* S.Rep.No.91–1004, 91st Cong., 2d Sess. (1970); H.R.Rep.No.91–1472, 91st Cong., 2d Sess. (1970), U.S.Code Cong. & Admin.News 1970, p. 5068.

Internal memoranda, interpretive opinions, and policy guidelines of the Department of Health, Education and Welfare from 1971 on delineate the policy of HEW on the question of the use of Title X funds for abortion referral services. In the absence of other clear evidence, policy guidelines issued by the agency charged with the administration of public assistance programs are entitled to great weight in interpreting a statute. *See Rosado v. Wyman*, 397 U.S. 397, 407, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1970); *King v. Smith*, 392 U.S. 309, 317, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). The policy of HEW appears to be that Title X funds may not be used to perform, promote or encourage abortions, but that such funds may be used for abortion referral services. Abortion referral is deemed to be a permitted activity by Title X recipients, but is not a required part of a family planning program. Referral is a "neutral activity," neither prohibited nor mandated by § 1008 of the Act. Memorandum of April 14, 1978 from Carol E. Conrad,

Senior Attorney, Public Health Division, Office of the General Counsel, HEW, to Elsie Sullivan, Assistant for Information and Education, Office for Family Planning. *See generally* exhibits A–1 through A–10 attached to defendants' motion for summary judgment. *See also* Program Guidelines for Project Grants for Family Planning Services under Section 1001, Public Health Service Act (Jan. 1976) (exhibit 3 attached to plaintiffs' motion for summary judgment). Because abortion referral services are not required by Title X, the state may, consistent with Title X, forbid the use of Title X funds for such referral services. N.D.Cent.Code § 14–02.3–02 is therefore compatible with Title X of the Public Health Service Act.[4]

C. The Constitutionality of § 14–02.3–02.

Plaintiffs attack the constitutionality of § 14–02.3–02 on several grounds. The argument that the statute unconstitutionally abridges the freedom of speech of Valley Family Planning's employees, in violation of the First and Fourteenth Amendments to the Constitution, is dispositive. The court, therefore, need not discuss any of the other constitutional arguments raised by plaintiffs.

■ The referral of persons to a physician who performs abortions is a form of speech protected by the First Amendment. *See NAACP v. Button*, 371 U.S. 415, 434, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963) (advising another of his legal rights and referring him to an attorney is a protected form of speech). There is a substantial individual and societal interest in the free flow of information regarding abortion. In the first trimester of pregnancy, the state may not interfere with the decision of a patient in consultation with her physician to have an abortion. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). If the state may not interfere with or prohibit the activity itself, it may not regulate discussion relating to that activity. *See Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). It is clear that the State of North Dakota may not impose a criminal penalty on those who refer others to physicians who perform abortions, or even on those who actively promote or encourage abortions.

■ The more difficult question is whether the state is required to subsidize an organization that provides abortion referral services. The State of North Dakota has no constitutional duty to subsidize family planning programs. But when the state chooses to subsidize, it must do so subject to constitutional limitations. *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977).

■■ A recipient of governmental benefits, such as Valley Family Planning, may not be required to surrender a constitutional right in order to obtain a benefit. An indirect inhibition or deterrence of the exercise of a constitutional right is as odious as the direct prohibition of the exercise of that right. *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Speiser v. Randall*, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).

[T]hough a person has no "right" to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not

---

4. In the order of August 16, 1979 enjoining the enforcement of § 14–02.3–02 the court held that plaintiffs had made a clear showing of probable success on the merits of their claim that § 14–02.3–02 conflicts with the objectives of Title X of the Public Health Service Act. 475 F.Supp. at 104. The court so determined on the basis of an uncontroverted 1976 interpretive opinion by HEW in the record. In conjunction with their motion for summary judgment, defendants have submitted several other interpretive opinions, policy guidelines and internal HEW memoranda that cover the period from 1971 to 1978. The additional documents submitted by defendants indicate that the policy of HEW is that Title X funds may be used for abortion referral services but that referrals are not a required part of a Title X family planning program. To the extent that the 1976 interpretative opinion before the court in August 1979 indicates that Title X grantees must provide abortion referral services, it does not represent the policy of HEW.

deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. Such interference with constitutional rights is impermissible.

*Perry v. Sinderman,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972).

■ The denial of funds to Valley Family Planning solely because of its abortion referral activities is an attempt by the State of North Dakota to produce a result it could not command directly. *Speiser v. Randall, supra.* The state may not directly prohibit abortion referrals and it may not inhibit or deter them by refusing to provide funds to Valley Family Planning, an otherwise qualified recipient of federal funds, solely because of the abortion referral activities of the employees of Valley Family Planning. N.D.Cent.Code § 14–02.3–02 is therefore unconstitutional insofar as it denies funds to plaintiffs because of the abortion referral services which it offers.

Although plaintiffs do not encourage abortions, the meaning of the word "encourage" is vague. A referral of a client to a physician who performs abortions may be considered "encouragement" of abortion. The standards of permissible statutory vagueness are strict in the area of free expression and the state may regulate only with narrow specificity. *Keyishian v. Board of Regents,* 385 U.S. 589, 604, 87 S.Ct. 675, 684, 17 L.Ed.2d 629 (1967). The word "encourage" in § 14–02.3–02 potentially has such a broad application that a person of ordinary intelligence would not be able to determine whether a conduct or utterance is proscribed. The threat of sanctions for engaging in encouragement of abortions would deter the exercise of free speech almost as effectively as the actual application of sanctions. *Grayned v. City of*

*Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); *Keyishian v. Board of Regents, supra.* The court holds that § 14–02.3–02 is also unconstitutional insofar as it denies funds to persons and organizations who encourage abortions.

Because plaintiffs do not perform abortions, the question of the constitutionality of § 14–02.3–02's prohibition of the performance of abortions is not reached.

### IV. *Orders.*

IT IS ORDERED the preliminary injunction issued in this case on August 16, 1979 is VACATED.

IT IS FURTHER ORDERED defendants' motion to dismiss is DENIED.

IT IS FURTHER ORDERED defendants' motion to certify is DENIED.

IT IS FURTHER ORDERED defendants' motion for summary judgment is DENIED.

IT IS FURTHER ORDERED plaintiffs' motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED judgment be entered declaring that the provision of N.D.Cent.Code § 14–02.3–02 which prohibits the funding of any person, public or private agency which refers or encourages abortion violates the First and Fourteenth Amendments to the Constitution.